THE PEOPLE OF THE STATE OF NEW YORK, PLAINTIFF,
*v.* THE BINGHAMTON TRUST COMPANY, DEFENDANT.

*Savings banks — a trust company, in paying interest on deposits and issuing pass-books, does not violate the savings bank act — an injunction cannot be granted on a submission without action.*

The Binghamton Trust Company, incorporated under chapter 546 of the Laws of 1887, advertised that it would receive deposits and pay interest thereon, and that it would issue pass-books to depositors, the rules relative thereto being quite similar to those which prevail in savings banks. It did not advertise or put forth a sign that it would receive deposits as a savings bank, but specifically that it would take them as a trust company.

Section 283 of chapter 409 of the Laws of 1882 provides " that it shall not be lawful for any bank, banking association, or individual banker, firm, association, corporation, person or persons, to advertise or put forth a sign as a savings bank, or in any way to solicit or receive deposits as a savings bank," and for a violation of the act a penalty is imposed.

The superintendent of the banking department, having reported to the attorney-general that the corporation was violating the statute, agreed upon a statement of facts, which was submitted at General Term without action, in which the people asked for an injunction restraining the corporation from further exercising its alleged illegal privileges, and also demanded payment of the penalty:

*Held,* that where a matter is submitted, under sections 1279 and 1281 of the Code of Civil Procedure, no injunction can be granted.

That the object of the statute in question was not to confer upon savings banks a monopoly of that class of business, but was only to prevent the public from being imposed upon by persons or corporations pretending to be savings banks.

That as there was no evidence to show that the corporation held itself out otherwise than as a trust company, this action could not be maintained.

SUBMISSION of a controversy between the People of the State of New York, as plaintiff, and the Binghamton Trust Company, as defendant, upon an agreed statement of facts, under section 1279 *et seq.* of the Code of Civil Procedure.

The admitted facts were substantially as follows:

*First.* That the defendant was incorporated in 1890 under the provisions of chapter 546 of the Laws of 1887; is located at Binghamton, N. Y., and commenced business on the 8th day of September, 1890.

*Second.* That in connection with its other business the defendant receives from its customers loans or deposits in large or small

amounts and issues a pass-book which contains the following printed matter :

" THE BINGHAMTON TRUST COMPANY.    INTEREST DEPARTMENT. RULES GOVERNING DEPOSITS.

" No. 1. This company will be open for the reception of deposits every legal business day from 9 A. M. to 3 P. M., except Saturdays, when the hours will be from 9 A. M. to 12 M., and from 7 P. M. to 9 P. M.

" No. 2. All deposits will be entered in the books of the company and a pass-book given to each depositor, in which the sum deposited and withdrawn will be entered by an officer of the company, and which shall be the evidence of the amount of money deposited and withdrawn.

" No. 3. In order to draw money the pass-book must be presented, accompanied by a written order or check of the depositor.    If the signature of the depositor be not on the signature-book, it must then be properly authenticated.    No depositor shall have the right to demand any part of his or her principal or interest without first giving to the company, in writing, ten days' notice for all sums of one hundred dollars or under ; twenty days' notice on sums between one hundred and five hundred dollars, and thirty days' notice on sums of five hundred dollars and upwards; but money may be voluntarily paid by the company at any time ·without such notice, and without thereby waiving the right of the Trust Company to exact such notice thereafter.    In all cases, when the whole deposit is withdrawn the pass-book must be surrendered to the Trust Company.

" No. 4. Interest will be paid at the rate of 4% per annum on all deposits left three months or longer.    Interest will be compounded semi-annually and entered upon the book of the depositor when presented.    No deposit of a less sum than of one dollar will be received, and interest will not be computed on the fractional part of a dollar ; and no less sum than one dollar shall be withdrawn at any time, except to close an account.

" No. 5. The Trust Company shall be at liberty to return the whole or any part of the deposits of any depositor, with accrued interest, whenever it may deem it advisable to do so, and to refuse to receive the deposits of any individual whenever it may deem it proper.

"No. 6. Money may be deposited for the benefit of minors or others, with such directions as may be given in writing at the time of making the deposit.

"No. 7. Should any pass-book be lost, the owner is required to give immediate notice thereof to the trust company, and the company may require such testimony and security as it may deem expedient before making any payment to such depositor, or to his order, or before issuing duplicate pass-book.

"No. 8. The acceptance of this book, and the entries therein, shall be conclusive evidence that the rules governing deposits printed herein are agreed to by the trust company and the depositor."

*Third.* That the defendant issues and distributes a circular, of which the following is a copy :

"The Binghamton Trust Company announces to the public that it is ready to receive deposits of money, and to transact such other business as its charter permits, at its office, corner of State and Henry streets, Binghamton, N. Y. While a trust company may be something unique among the banking institutions of the ' southern tier ' of counties, its organization is intended to supply a need that has long existed. East of Binghamton there is none nearer than New York; north, none nearer than Syracuse; west, none nearer than Buffalo ; while, south, a large section of Pennsylvania is unsupplied with a similar institution. In this extensive territory there is a large amount of capital held by its owners without earning any return, which, through the medium of a trust company, can be made to realize a definite income. The large capital employed, and the restrictions to which the trust companies are subjected by the laws of the State, render them the safest kind of depositories ; and, as the name implies, are institutions that the people may *trust* with their savings. The Binghamton Trust Company has a paid-in capital stock of $400,000, and its list of stockholders is a directory of the wealth of Binghamton. Each stockholder being liable to the amount of his stock, and every stockholder being abundantly responsible, the actual security afforded the depositor in the Binghamton Trust Company is $800,000, in addition to the assets in which the deposits are invested. The capital of the company is required by law to be invested in bonds and mortgages on unincumbered real estate in the State of New York, worth at least double the amount loaned thereon ; on stocks of New York State, or in

stocks and bonds of incorporated cities or counties of the State, duly authorized to be issued, thus placing the capital in securities of undoubted safety, of fixed value, and of a kind unaffected by stock manipulations.  By its charter the Binghamton Trust Company has authority, and is prepared, to loan money on real or personal security ; to act as fiscal or transfer agent, as trustee, guardian or receiver, as executor or administrator, as committee of the estate of persons of unsound mind ; to act as agent in the collection of income or rents ; to accept and execute trusts of married women in respect to their separate property ; to take, accept and execute any and all trusts that may be committed to it ; to receive deposits in trust ; to receive deposits of money, in active account, subject to check at sight without notice ; to receive deposits and issue therefor certificates transferable and payable on demand, with interest at the rate of four per cent per annum, if left three months, and special rates for other definite periods.

"An interest department has been organized and deposits therein will be governed by the following rules (which were the same as set forth in the second statement of fact).  This trust company differs from a savings bank in that it has a large capital, safely invested, that is pledged as security to its depositors.  This pledge, with the liability of the stockholders, amounts to $800,000.  Eight hundred thousand dollars, therefore, stand between a depositor in this company and any possible loss.  Interest is paid at a fixed rate, and is not dependent upon earnings.  There being no stated dividend period, deposits can be withdrawn at any time after three months, and full interest will be paid to date of withdrawal.  The trustees are well-known business men.  Successful in their personal affairs, they bring to the management of the trust company experience and sound judgment that are sufficient guarantees that any trust committed to the company will be faithfully and honestly executed.  The trust company is free from the contingency of death, which is so often a disastrous feature in the selection and appointment of an individual as trustee.  When a person selects it to act as his trustee he has the assurance that it will be in continuance as long as the trust lasts.  Securities will be cared for and receipts given.  A special room will be assigned to the patrons of the company desiring to look over their securities, or for the transaction of private business.

A suitable room, when desired, will be assigned corporations for holding meetings. To the ladies in particular the trust company is expected to be a benefit and convenience. Their patronage is especially solicited, and they will receive every attention and consideration. A room is provided for their exclusive use, and also a separate pay window  Any assistance or advice they may wish in regard to the transaction of their business will be gladly given by the officers of the company. Competent and courteous clerks in charge will give information and render all assistance desired for the prompt and satisfactory transaction of business. By courteous treatment and honorable dealing, the company hope to merit and receive your confidence and patronage."

*Fourth.* That the defendant inserts in the papers published in the city of Binghamton and surrounding country, the following advertisement :

" The Binghamton Trust Company, corner State and Henry streets, Binghamton. Paid in capital, $400,000. Stockholders personally liable for $400,000 more. Eight hundred thousand dollars stand between a depositor in this company and possible loss. It will receive active deposit accounts subject to check at sight. This company is a legal depository for moneys paid into court, and is authorized to act as guardian, trustee, executor and administrator ; also as registrar, trustee, transfer agent and fiscal agent for States, cities, towns, railroads and other corporations. Collects rents, coupons and dividends. Ladies unaccustomed to the transaction of business will find this company of great assistance. The company will loan money on real or personal security, and issue drafts and bills of exchange. Approved mortgages purchased. An interest department has been organized, and deposits therein will draw interest, until further notice, at the rate of four per cent per annum, if left three months or longer, subject to usual rules. Interest begins at date of deposit, and draws interest till withdrawn. Send for pamphlet giving full particulars."

*Fifth.* The defendant receives deposits and loans from its customers upon the terms and under the regulations set forth in the pass-books delivered to depositors, and in the advertisements set forth herein.

*Sixth.* The plaintiffs claim and allege that the defendant, in carry-

ing on the class of business of receiving deposits of money, paying interest thereon, issuing the pass-book as referred to, and under the rules, regulations and advertisement herein set forth, is exercising privileges not conferred upon said corporation by law, and violates the provisions of law under which it was incorporated, and other laws binding upon it, and particularly violates section 283 of chapter 409 of the Laws of 1882, known as the banking law, and the superintendent of the banking department of the State of New York has reported such violation to the Attorney-General.

*Seventh.* The defendant claims that, in carrying on the business in the manner stated, it is exercising powers conferred upon it by law, and not in violation of chapter 409 of the Laws of 1882, section 283.

*Eighth.* The plaintiffs demand that judgment shall be entered upon this submission in favor of plaintiffs restraining the defendant, " the Binghamton Trust Company," from carrying on business in the manner referred to, so far as said business is in violation of the provisions of the banking law of this State; that it may be decreed that the defendant is exercising franchises not conferred upon it by law; that the plaintiffs may recover a money judgment against the defendant for a penalty of $100 for carrying on said business, as alleged, in violation of law, and particularly section 283 of chapter 409, Laws of 1882, known as the banking law; and that the plaintiffs may have such other and further relief as to the court it may seem just and proper to grant.

*Ninth.* The defendant demands that judgment shall be entered upon this submission, declaring that it has not violated any provision of law of this State, and especially section 283 of chapter 409 of the Laws of 1882, and that it is authorized to carry on business in the manner herein referred to, and under the rules, regulations and advertisements set out in this submission; but if not, then that the relief prayed for by the plaintiffs may be granted."

The district attorney of Broome county joined in this submission and demanded the enforcement of the penalty therein asked for.

*S. W. Rosendale*, Attorney-General, for the plaintiff.

*W. J. Welsh*, for the defendant.

MARTIN, J.:

The submission in this case discloses that the judgment sought by the plaintiffs is to restrain the defendant from carrying on business in the manner described in the submission, so far as it is in violation of the provisions of the banking law of this State; to adjudge that the defendant is exercising franchises not conferred upon it by law; and for a penalty of $100 for carrying on business in violation of the provisions of section 283 of chapter 409 of the Laws of 1882. The only actual relief which the plaintiffs ask is: 1. To restrain the defendant from continuing business in the manner mentioned. 2. To recover the penalty provided for by section 283. The former cannot be awarded. No relief by injunction can be granted in a proceeding like this. Therefore, so far as this proceeding is for an injunction, it should be dismissed. (*Cunard Steamship Co.* v. *Voorhis*, 104 N. Y., 525; *Paterson* v. *Mut. Life Assn. of America*, 19 Civ. Pro. Rep., 262.)

This leaves for consideration the question whether the plaintiffs are entitled to recover a penalty under the statute, which provides: "It shall not be lawful for any bank, banking association or individual banker, firm, association, corporation, person or persons, to advertise or put forth a sign as a savings bank, or in any way to solicit or receive deposits as a savings bank; and any bank, banking association or individual banker, firm, association, corporation, person or persons, which shall offend against these provisions, shall forfeit and pay for every such offense the sum of one hundred dollars for every day such offense shall be continued, to be sued for and recovered in the name of the people of this State, by the district attorneys of the several counties, in any court having cognizance thereof, for the use of the poor, chargeable to said county in which such offense shall be committed." (Laws 1882, chap. 409, § 283.) Whether or not such recovery can be had depends upon the construction to be given to this statute.

If the purpose of the statute was to prohibit any person, firm, corporation or association from either soliciting or receiving deposits in the manner in which they are usually solicited and received by savings banks, it would seem that the plaintiffs would be entitled to a judgment for the penalty demanded, for, when we consider the facts stipulated as to the nature of the business transacted by the

defendant, the manner in which it was performed, the circulars the defendant distributed and the advertisements it published, it is quite manifest that the defendant solicited and received deposits in substantially the same manner as they are solicited and received by savings banks.

Thus the question is presented whether the legislature intended to confer upon savings banks a monopoly of the class of business usually transacted by them, or whether the intent and purpose of the statute was to protect the public against deception or imposition by prohibiting the receiving and soliciting deposits by any person, firm, corporation or association under the claim or pretense of being a savings bank. We think the latter was the purpose of the statute. This becomes quite obvious when we read all the provisions of that section. The manifest purpose of the section was to render it unlawful to advertise, put forth a sign, solicit or receive deposits claiming or pretending to be a savings bank. If such is the proper construction of the statute under consideration, and we think it is, it follows that the plaintiffs are not entitled to recover the penalty sought to be recovered in this action, as the statement of facts is insufficient to justify us in holding that the defendant, in any manner, held itself out as a savings bank or solicited or received deposits claiming or pretending to be such.

These considerations lead us to the conclusion that this action, so far as it is for an injunction to restrain the defendant from carrying on its business in the manner mentioned, should be dismissed; and so far as it seeks to recover a penalty, judgment should be entered in favor of the defendant upon the merits, with costs.

HARDIN, P. J., and MERWIN, J., concurred.

Action dismissed, so far as it is for an injunction, and judgment directed for the defendant on the merits, with costs, in accordance with the opinion of MARTIN, J., and form of judgment to be settled before MARTIN J.